Case No. 21-3048 United States of America v. Maxine Murray-Williams, Appellant Ms. Bitterman for the Appellant, Mr. Hansford for the Appellant Good morning Judges, Rows, Clowns, and Rithers My name is Donna Bitterman and I am here representing the Appellant Maxine Williams Ms. Williams was not afforded effective, constitutionally effective assistance of counsel in this record and we have identified three ways in which she was not afforded constitutionally effective assistance of counsel. The first way is that her attorney never met with her in person. The second way is that she was not told she could be in court for sentencing, which she has stated she would have chosen. And the third way is that the her attorney did not ask for any character letters. At the very least, we presented a colorable claim here that requires a hearing. This court and other courts have consistently held that ineffective assistance of counsel claims typically require factual development in the general district court and the district court below. And so we believe that is true here. Now in the government's... May I just start out by asking what is the type of relief that we would seek? Because I understand that her period of incarceration is at least over, maybe not the supervised release, but so what would be the relief at this point? That is correct. She has finished her term of imprisonment. She is on three years of supervised release. So what we would be doing is trying to get her plea overturned and for her to be able to go to trial if she wanted to on this. That is what she is seeking. Okay. And does she understand that if her plea is overturned, then it goes back to the prosecutor to determine what the potential charges could be, including what she had and even the other ones that were perhaps dismissed as a result of the plea agreement. She does. She does. She steadfastly believes in her innocence and would like this off of her record. And she told me that last night. Okay. And then even in that regard, aside from whatever might be ineffective assistance of counsel, we still have on the record her actually accepting her plea knowingly, voluntarily and intelligently with a substantial plea colloquy by the district judge. I understand. Now, let me go on to the three different ways which we've alleged there were ineffective assistance. First of all, her attorney never met with her face to face. She had hired him in February of 2021 and February 26th. The information in this case was filed on March 28th, 2021. And two days later, the district court set it for a plea which was taken on April 6th, 2021. So it was a very, very short period of time that this attorney actually represented her. And during that time, he never once met with her in person, even though she asked him to. Now, this is an allegation that would lead to ineffective assistance of counsel, because it would change her desire to enter into the plea. And it's something that we can't permit on this record. It's something that would have to go back to the district court for an evidentiary hearing in order to determine that indeed they never met face to face. And indeed, she had requested that of her attorney. That's the first issue that we have raised. The second issue we have raised is that she was told she could not appear in person and that it's in the plea agreement. But at the hearing, she was told she could appear in person, which took her by surprise because she has insisted that she would have agreed to appear in person. And it could have changed the plea as well, had she appeared in person. But it was too late at that point. Her attorney didn't inform her of this. And again, that's something that needs to be factually developed. So it's a remand. The third point is that there's no character witnesses or letters that were asked for on her behalf. This is a basic but a very important step when somebody is being sentenced. The government has said, well, she didn't have anyone that she could have asked for, but that's their assumption. And it's not something that can be determined by the record. Again, it's something that she would need to testify to in order to be able to say who she would have asked for character witnesses or letters. The government, in fact, has actually identified two people. The first one being her mother, who lives in a different country, but could have given her a letter. And the second one being what they call Individual A. And they say he would not have been a good character witness because he was somewhat, or she, was somewhat peripherally involved in that some checks were put into that person's account. But that's the government. Two other points. She doesn't indicate any dissatisfaction with her lawyer on the record. Is that correct? She does not. Okay. And then secondly, with respect to the character letters, it appears that the district judge did indicate that this particular offense was out of character for her. Yes. But even then felt like the judge did not believe that she could actually give her any guidelines in this regard. So taking into the 3553A factors in consideration of the gravity of the offense and the amount of money and the nature and time significance of several offenses occurring within this particular charge. Yes, that is correct. But the character letters could have changed his mind on whether he could have given her a lower... But the judge also spoke to the fact that, again, out of character, but spoke painfully about having to deal with this person in the sense that it is out of character, but just couldn't get over the significance of the crime. Right. But the character letters that she could have gotten could have helped him to get over that depending on what had been in them. And that's one of the things that we need to have on the record in order to be able to address. Her allegations here, Ms. Williams' allegations, she doesn't identify anyone who could have written letters to her, does she? Not in our briefing, no, she does not. Other than her mother. So how does that... I mean, isn't that just fairly... Isn't that too conclusory then? Well, I was... I don't think it is. And because I think that when we were working on the briefing, she was in jail or about to go into jail, a prison, and I think that she didn't have the time really to figure out what she could tell me in order to put into the briefing. But she could certainly be able to now address that and to know who it is that she wanted to ask for character letters for. Isn't that ignoring her burden on 2255? I'm sorry, is that what? Ignoring her burden on 2255. This is not a direct appeal. Correct. Well, this is under a direct appeal, but it's a direct appeal that is an ineffective assistance of counsel. And yes, she... I don't think it's ignoring her burden. I think it's understanding the practicalities of what was going on at the time. Well, anybody could say they could get letters. Well, that's what we need the hearing for at the district court in order to be able to develop the record a little bit more. I think it's a very... No, the district court's correspondent doesn't have that obligation. No, she wants to have the opportunity to do it at the district court. Now, the government's argument is mostly assuming... Can you point to anything in the record, though, that overcomes the strong presumption that her counsel was acting within the wide reasonable professional assistance, which is the standard? What was outside the reasonable range of professional assistance? I think what was... Failing to ask for letters. I think what was outside of it was the three things that we have identified. The first one is that he never met with her in person. And that is clearly outside of a reasonable attorney's representation. And the second one is the character letters. And the third one is this issue of her not being told she could be in court until she got to the sentencing and she was telephonic and it was already too late. I do want to just quickly mention, I think that the government's arguments are all assuming that Lee was the only reasonable response based on the evidence. But that's not a factual assumption. That's just not a factual statement. It's really an assumption more than anything else. The government is deciding that he couldn't have done anything else rather than allowing her to present evidence otherwise. I would like to reserve the rest of my time for, without unless there's any other questions. Thank you. Good morning, and may it please the court, Eric Hansford for the United States. The record in this case shows that there was no deficiency by counsel, either in the plea or in the sentence. In any way, there was no prejudice. This court need not reach those issues because there's a preliminary problem, which is that in her briefs on appeal, the defendant has not even alleged that there was prejudice. And that pleading failure means there is no basis for remand under the Supreme Court's holding in Hill, as well as this court's multiple decisions cited on page 20 of the brief, like Horne, Tucker, and Muhammad. And for that reason, this court should affirm. This is, just to clarify, this is a direct appeal. This is not a 2255. And as far as we know, the defendant has not filed a 2255, although the time has not run on that. I understand that. My question was going to what is her burden? That at this point, she never raised it. Normally, she'd be in a 2255 situation. She's trying to get under the more liberal standard under a direct appeal, but she hasn't put anything in the record. That's the point I was trying to make. So that's the burden. I don't understand how she meets it. No, we certainly agree that she does not need it. And even, I mean, even before you're getting to burdens and what sort of evidence there should be, she needs to make these kind of basic allegations. That's what the Supreme Court says in Hill. And she needs to make these allegations in a non-conclusory way, which is what the Tucker court goes through, this court in Tucker goes through. The defendant's allegations here are similarly conclusory to the allegations in Tucker where this court said, for example, the allegations in Tucker where there was a failure, an alleged failure to investigate potential other witnesses. This court said, we don't need to remand that because she hasn't identified any actual witnesses, that defendant in Tucker hadn't identified any witnesses. And it's similar here with the character letter. But isn't the government also being conclusory when you make a statement that says no one credible could write a character letter for her. Isn't that an assumption? I think we're saying the record as it stands, we're not saying it's impossible that she would be able to find someone who could write a character letter for her. We're saying the record as it stands indicates no one credible. And that's not just because of the absence of evidence. That is because she is repeatedly describing, repeatedly saying during the sentencing colloquy that she has no family. She has no one close to her. She says she only has her support dog, that she's been out of contact with her mother. This individual A who she's now identified at argument as a potential source of a character letter was caught up in the scheme. This was someone who she was also depositing checks into that person's bank account. And so I believe it's the district court. It's either the government or the district court in the release litigation says that's not a credible person to provide a character letter. But I think the more important point is what you were saying, Judge Childs, earlier, which is that the sentencing here was based on the conduct, not the character. And indeed, the judge said repeatedly, we recognize this is out of character. This does not seem to reflect who you've been for your life. But the egregious conduct in this case is the reason that I'm imposing the sentence that I am, what the judge said. So based on that, we don't think she'd be able to show prejudice based on the letter. But you would agree that character would be one of the 35, 53 attacks, the history and characteristics of the defendant. That's right. That's certainly true. Yes. We do think just before we get into the merits, we do think these pleading failures under this court, a remand in this case and her failure to offer any actual allegation here alone should be a basis for affirming. The failure to allege prejudice? That's correct. Her failure to allege prejudice. What about the failure of the attorney to meet with her in person? What would she have to allege, do you think, to get past this stage? So I think in order to, it would be different for deficiency or prejudice, but she would have to be identifying things that she, reasons that she wouldn't, that the failure to meet with her in person would have hurt her. So in other words, things that wouldn't have been conveyed via Zoom meetings, but would have been conveyed in person. Remember, this is March, February of 2021, a time when very little was going on in person. And so we have a specific statute from Congress recognizing that saying in remote sentencing, pleas are acceptable. And so this is a time when it was perfectly appropriate for counsel to be meeting remotely with their clients. So you think there was no deficiency? We think there's no deficiency in being remotely, at least for this sort of pre-indictment plea. There may well be an argument that if you were preparing a client for trial testimony, that maybe at that point you should be meeting with the client in person. But that's a very separate issue from kind of what conversations need to be happening with a pre-indictment plea. And also, she would have to allege some reason to think that would cause prejudice. In this case, she just hasn't alleged any reason to think that would cause prejudice. And there were several opportunities before the plea date in terms of the proctor and- That's exactly right. There were several opportunities. And she's repeatedly, during the plea as well as in the plea itself and at sentencing, expressing, saying she's happy with counsel, with the services that were provided by counsel. And so she would have had many opportunities. She didn't want to go forward with a plea. She was not being forced to go forward with a plea. She would have had opportunities to change things around. And indeed, she did change counsel. She retained this counsel a month before the plea. And so she clearly knew that she was able to. She was unhappy with counsel, with each counsel. She obviously did not pursue that. And so if there are no further questions, we'd ask this court to affirm. I have just a few things I would like to address on rebuttal. The first one is that the governor has mentioned and mentioned in his briefing that she was out of contact with her mother. That only lasted for a couple of months. It's not like she was ever out of contact with her mother. It was just for a couple of months. And there isn't anything on the record that explains, that talks about how long it was or whether that was something that could be remedied. And again, that's another reason for hearing. The government stated that I identified individual A as a possible character witness, but that's not what happened. I said that the government, in its paperwork, had identified individual A as a possible character witness. I was not identifying him myself. I had mentioned that. That's what the government had mentioned in their brief. As for identifying reasons that the failure to meet in person would have made a difference, we did do that in our briefing. We did mention that that sort of a thing makes a difference as to how somebody comes across on the stand and how a judge or a jury would react to them. And that's not really possible to effectively represent somebody without knowing how that would be. Now, the government has mentioned just now, there's no evidence in the record. The government said that there's no evidence that a face-to-face would have been different from a Zoom. No evidence in the record even that they had even seen me. The point was that he only spoke to her and told her to tell them. And the government said that if it was preparing a client for trial, it may have been deficient not to meet with her. But the point is you can't decide whether you're going to go to a trial or take a plea without being able to see somebody face-to-face. And to just say, well, they had been preparing for trial, could have been deficient, suggests that it's deficient here as well, because they don't know what they're going to be doing. For all these reasons and any others that are obvious in the record, it's safe to say that we have made allegations here that are non-conclusory, and we would ask for reversal and remand to the district court right here. Thank you. Just one quick question that just kind of came to my mind. How much weight are we to put on the judge's statements below in terms of everything that the judge went through with the plea colloquy, as well as the sentencing factors that ultimately lead to the outcome? Because, again, that's kind of a prejudice prong, too, from the standpoint that we anticipate in that entire process. Correct. So which statements are used? Well, I'm just talking about just generally the plea colloquy led her to that voluntarily, intelligently, and informed decision, because the judge extensively went through all of these questions. And at any point, there could have been an opportunity or some kind of hint of dissatisfaction, of not understanding, of having concern about what she was pleading to. But she accepted responsibility for all of the issues that were there, and then also had lesser charges. So how much weight are we to place on what has already occurred versus what she's raising now after the fact? Well, Your Honor, I think that the fact that it was held by telephone and that she wasn't in the room affects that. It definitely affects the weight to be given to it, because it's different if you're in the room and you're talking to the judge and you're there and you say, wait a minute, hold on. In the sort of Zoom and telephone conferences we're having at the time of this plea, it's a lot harder to do that. It's a lot harder to, you can't make facial or hand motions or stop somebody as easily. And so I think that definitely affects the analysis. Thank you.
judges: Rao, Childs, Rogers